## AMOS BEMIS *vs.* DAVID H. SMITH.

When a grantor of land covenants with the grantee that the granted premises are free from all incumbrances, except a mortgage which he engages to discharge, and also covenants to warrant and defend the premises against the lawful claims and demands of all persons, he is liable on the covenant of warranty, if, by his omission to discharge the mortgage, the grantee or his assignee is obliged to discharge it in order to remove the incumbrance.

In a suit by the assignee of an insolvent debtor, on a covenant of warranty in a deed of land made to such debtor, the defendant may set off, by virtue of *St.* 1838, *c.* 163, § 3, notes and accounts due to him from such debtor : And he may also set off such notes and accounts, in a suit on such covenant, brought by the purchaser of the land at the assignee's sale thereof, if the purchaser, when he bought the land, had notice that the defendant claimed such set-off.

A creditor, who has proved his claim against an insolvent debtor, under *St.* 1838, *c.* 163, may waive such claim, for the purpose of setting it off in an action brought against him on a covenant of warranty of land, made by him to such debtor and his assigns, and may set off the claim in such action, although the master, before whom he proved it, refuses to grant his petition to withdraw it, and orders a dividend thereon.

THIS was an action for breach of the covenant of warranty in a deed of the defendant conveying a tract of land to Elihu Pond, whose estate therein was assigned to the plaintiff under the insolvent law of 1838. The case was submitted to the court on an agreed statement containing the following facts :

The defendant, on the 17th of April 1841, by his deed of that date, conveyed the land described in the plaintiff's writ to Elihu Pond, for the consideration of $1300. This deed contained these covenants : "That I am lawfully seized in fee of the aforegranted premises; that they are free of all incumbrances except a mortgage to Increase S. Smith,

Bemis *v.* Smith.

which I agree to discharge ; that I have a good right to sell and convey the same to the said Pond; and that I will warrant and defend the same to the said Pond, his heirs and assigns forever, against the lawful claims and demands of all persons." On the same day, said Pond gave the defendant two notes, one for $77·38, the other for $77·37, both on interest. Said Pond continued to own and occupy said land until May 18th 1843, when he made a petition to a master in chancery, for the benefit of the insolvent law, on which petition the master issued a warrant according to law. The first meeting of said Pond's creditors was held on the 1st of June 1843, when the defendant (among other creditors) presented the aforesaid notes, and the balance of an account of $13·65, which were proved and allowed to the amount of $187·92, which was the full sum due thereon, including interest. At said meeting, James Allen was chosen assignee of said Pond's estate, and the master made an assignment to him of said estate, on the same day.

At the second meeting of said Pond's creditors, on the 30th of said June, the defendant presented a written petition to the master, praying that the proof and allowance of his aforesaid claims, to the amount of 187·92, might be vacated and expunged, because he believed "that the same would be fully cancelled by a set-off of claims which the said Pond held against him at the time of the first publication of notice of his insolvency." Said meeting was adjourned to the 10th of July following, when the defendant presented the following written paper : "In the matter of Elihu Pond, an insolvent debtor, David H. Smith, who proved a claim of $187·92 against said debtor at the first meeting of the creditors, now withdraws and waives the proof of the same, to all legal and equitable intents and purposes, as fully as if the same had never been presented. David H. Smith." The master disallowed the aforesaid petition of the defendant.

At the third meeting of said creditors, held November 21st 1843, the master ordered a dividend of seventy per cent. to be paid to all the creditors who had proved their debts, speci-

fying their names, (including the defendant,) and the amount to be paid to each. The defendant has refused to receive the amount of his dividend, and it is still in the hands of the assignee of Pond's estate.

On the 1st of July 1843, the defendant caused to be recorded, in the registry of deeds in this county, this notice : " Whereas, on the 17th of April 1841, I conveyed by deed to Elihu Pond, now an *insolvent debtor,* a certain farm in Paxton, containing about 60 acres, as by reference to the registry of deeds, book 364, page 605, will appear; and whereas, in and by said deed, I agreed to discharge a certain mortgage upon said farm, held by Increase S. Smith, to secure the payment of $500 : Now this is to give notice to all purchasers of said farm, and others, that I shall hold myself in no wise responsible upon said agreement, as the same is paid and satisfied by good and sufficient claims which I held against said Pond, when notice was first given of his insolvency, and which I now hold against him, by way of legal and equitable set-off against the amount specified in said agreement; and I caution all purchasers of said farm, and others, accordingly. June 30th 1843. David H. Smith." *At the time of the sale at auction hereinafter mentioned, the defendant gave the same notice to the plaintiff, and to the rest of the company attending the auction.*

On the 23d of September 1843, said assignee made sale at auction of said land, stating, in the conditions of sale, that the defendant had given and recorded the above notice, and that he (the assignee) was advised by counsel that the defendant could not be exonerated from his obligation to discharge said mortgage. The land was purchased by the plaintiff for $500, and said assignee executed and delivered to him a quitclaim deed thereof, on the 6th of November 1843, and the plaintiff took possession under the same. Said Increase S. Smith then commenced an action on his said mortgage for possession, and at the March term of the court of common pleas, held in 1844, recovered the usual conditional judgment, for possession, against the present plaintiff,

viz. unless he should pay $267·05 and interest, and $8·64 costs, &c. On the 5th of May 1844, said Increase S. Smith took possession of said land, by virtue of a writ of possession which issued on said judgment ; and the plaintiff then paid him, in satisfaction thereof, the aforesaid sum of $267·05 and interest, and said costs, and also officer's fees, amounting in all to $281·90.

On the same day on which the defendant conveyed to said Pond the land described in the plaintiff's writ. viz. April 17th 1841, Pond conveyed to the defendant a farm in Oakham, and in his deed thereof covenanted that he was lawfully seized in fee of the granted premises; that they were free of all incumbrances, except a mortgage to Henry Penniman, for $500, and another mortgage to Simeon Haskell, for about $70, which last mortgage he agreed to discharge ; that he had good right to sell and convey the same to the defendant ; and that he would warrant and defend the same premises to the defendant, his heirs and assigns forever, against the lawful claims and demands of all persons. The defendant is still the owner of said farm, and at the time of the insolvency of said Pond, the said mortgage to Haskell was outstanding; and on the 24th of May 1843, when the notice of said insolvency was first published, there was due on the notes secured by said mortgage the sum of $78·69, making, with the $187·92 proved by the defendant, as aforesaid, against said Pond's estate, the sum of $266·61. Upon a rebate of the interest on the debt of the conditional judgment of said Increase S. Smith against the plaintiff, from the time when the same was rendered, in March 1844, back to said 24th of May 1843, it would leave $254·58 due as of that date.

On the 1st of September 1843, said Pond had received a discharge from his debts, and no one appearing to pay said Haskell's mortgage on the defendant's farm, he called on said defendant, who paid and took an assignment of the same, and of the notes thereby secured, then amounting to $79.94.

*Hartshorn,* for the plaintiff.

*Barton,* for the defendant.

17 *

WILDE, J. Upon the case stated, several questions are raised, the principal one being as to the defendant's right of set-off. The action is founded on the covenant of warranty contained in a deed of conveyance of real estate from the defendant to Elihu Pond. The defendant therein covenanted with said Pond, that he (the defendant) was lawfully seized in fee of the granted premises, that they were free from all incumbrances, except a mortgage to Increase S. Smith, which the defendant agreed to discharge, and to warrant and defend the premises to said Pond, his heirs and assigns forever, against the lawful claims and demands of all persons. After this conveyance, Pond became insolvent, and the premises were duly conveyed to the plaintiff, who has been compelled to pay the mortgage debt due to said Increase S. Smith.

The first question is, whether upon these facts there is a breach of the covenant of warranty ; and we think that there clearly is. The defendant's counsel contends that this covenant is qualified by the covenant to pay the mortgage to Increase S. Smith, and that the latter covenant does not run with the land. But there is no rule of construction, nor any reasonable principle, upon which this ground of defence can be maintained. The covenant to pay the mortgage qualified the covenant against incumbrances, and nothing more. Such are the express language and true meaning of the exception and covenant. The facts admitted show a breach of both covenants, viz. that of warranty, and the covenant to remove the incumbrance. And it certainly cannot be maintained that the breach of one covenant, without satisfaction, can be any bar to a recovery for the breach of the other covenant.

The other ground of defence, however, on which the defendant mainly relies, we think is well maintained. On the facts agreed, we can have no doubt that the defendant would have a good right of set-off in an action by Pond ; and the plaintiff has no better right than Pond would have had, if he had been compelled to discharge the incumbrance. The insolvent law (*St.* 1838, *c.* 163, § 5,) provides that the assignees

of an insolvent debtor " shall have the *like remedy* to recover all the estate, debts and effects, in their own names, as the debtor might have had, if no assignment had been made." The plaintiff, having express notice of the incumbrance at the time of his purchase, has no greater right than the assignee had.

It has been argued, that the defendant, by proving his debt in part before the master, is precluded from his claim of set-off, as to the part so proved.  But we think otherwise.  He acted unadvisedly in proving his claim before the master; but he has withdrawn that claim, so far as he was allowed so to do ; and there seems to be no good reason why his legal and equitable rights should be barred by a mere mistake.  In the case of *Sargent* v. *Southgate*, 5 Pick. 312, the defendant was allowed to file in set-off a note of hand upon which he had before commenced a suit.  So in the present case, although the defendant proved his debt in part, before the master, he has not received any dividend ; and after the allowance of his claim of set-off, he cannot be entitled to a dividend, and no injustice can be done to the creditors of Pond.  We are therefore of opinion that the defendant's claim of set-off ought to be allowed.  This, we think, would be a case of mutual demands, within the meaning of the third section of the insolvent law, if the action had been brought in the name of the assignee.  That section provides, that " when it shall appear that there has been mutual credit given by the debtor and any other person, or mutual debts between them, the account between them shall be stated, and one debt shall be set off against the other," &c.  This point of set-off is supported by the decision in the case of *Tuckers* v. *Oxley*, 5 Cranch, 39, and *Ex parte Prescot*, 1 Atk. 230, cited by the defendant's counsel, and by other authorities.  See Babington on Set-off, *c. 5.*  In *Tuckers* v. *Oxley*, it was decided that the term " debt," as used in a section of the first bankrupt law of the United States similar to the provision in the third section of the insolvent law, was fairly to be construed to mean any debt for which the act provides

"A debt," Chief Justice Marshall says, "which may be proved before the commissioners, and to the. owner of which a dividend must be paid, is a debt in the sense of the term as used in this section." And in *Ex parte Prescot*, it was decided that a debt, although payable at a future day, and although not strictly a mutual debt, might be set off under a like provision in the English bankrupt law.

Upon these authorities, and upon principle, considering the plaintiff as entitled to no greater rights than the assignee had, from whom he derived his title, with express notice of the defendant's claim, we are of opinion that the same must be allowed; and, as it exceeds the plaintiff's demand, this action cannot be maintained.

*Plaintiff nonsuit.*